## THE ISLA DE PANAY.

(District Court, S. D. New York.
October 23, 1922.)

No. 797.

Shipping ⊚⟺106—Carrier not estopped from asserting insufficiency of containers by failure to note insufficiency in bills of lading.

Failure to note in bills of lading the insufficiency of containers did not estop carrier from asserting the insufficiency of containers as the cause of the damage to the goods, as against consignees suing carrier for damage thereto.

In Admiralty. Libels by Austin, Nichols & Co., by E. Sanchez & Co., and by E. Tolibia & Co., against the steamship Isla De Panay, her engines, boilers, etc. Libels dismissed.

Bigham, Englar & Jones, of New York City (John S. Woodruff, of New York City, of counsel), for libelants.

Hunt, Hill & Betts, of New York City (John W. Crandall, of New York City, of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. Libelants are consignees of shipments of olives under clean bills of lading. The bills of lading were signed in Seville, Spain, and the olives were loaded on the ship at Cadiz. These bills did not in terms contain any statement as to the apparent condition of the goods shipped, and embraced a clause that the ship should not be responsible for "breakage of the articles and fragile containers."

I think the great weight of evidence is to the effect that the chestnut casks containing the olives were old and insufficient at the time the merchandise left Seville for transshipment to claimants' vessel at Cadiz. The steamship agents distrusted the containers, and insisted upon an agreement of indemnity as a condition of carrying the merchandise under clean bills of lading, which seems to have been given at Seville. There is no evidence of bad stowage or really unusual weather, or of an unseaworthy vessel, but the evidence is quite the contrary. Nor is there proof of any handling by the stevedores at New York which should cause damage if the olives had been in proper casks.

The libelants paid drafts accompanying the bills of lading without knowledge that the containers were old and insufficient. If there is any liability here for damages, it is upon the theory that, by failing to note in the bills of lading any insufficiency in the containers, the steamship misled the libelants to their injury, and is now estopped

under the doctrine of Higgins v. Anglo-Algerian Steamship Co., 248 F. 386, 160 C. C. A. 396, to claim that the containers were insufficient. In that case, however, there was in the bill of lading an express representation that the merchandise itself was in apparent good order and condition, when it was known to be injured by rainwater. Here the parties doubtless believed that the olives would go through, but the ship's agents were not willing to take the risk of any liability which might arise from old casks. No case has gone so far as to hold that a bill of lading containing no words representing the condition of the containers would give rise to an estoppel. Harter Act, § 3 (Comp. St. § 8031), expressly provides that the vessel shall not be liable for any "insufficiency of package."

The libels are dismissed, with costs.